## GEORGE ANDRE, JR., v. MINE ANDRE et al.; LOU-ELLA ANDRE, Appellant.

### Division One, June 6, 1921.

1. **WILL: Construction: Equity Jurisdiction.** Circuit courts, as courts of equity, upon application of devisees claiming merely legal estates, have jurisdiction to construe doubtful provisions of a will, whether they relate to real estate or personal property.

2. ————: ————: **Mistake of Draftsman: Reformation.** A court of equity has jurisdiction to reform a will so as to correct mistakes of the draftsman which are apparent on the face of the instrument or arise out of a latent ambiguity. [Distinguishing Goode v. Goode, 22 Mo. 518.]

3. ————: ————: **Quieting Title: Cause of Action.** A petition which, in its first count, pleads a will in full, alleges that it has been probated, sets out the land actually owned by testator, indicates specifically wherein its provisions disposing of the land owned and devised are uncertain and conflicting, and suggesting a construction which should prevail, and, in the second count, pleads the ownership of the land attempted to be devised to plaintiff, alleges the assertion of claims adverse thereto, asks the court to ascertain and determine the interests of the parties and prays a decree quieting title in plaintiff, states a cause of action in both counts.

4. ————: **Record: Recital in Bill of Exceptions.** A recital in the bill of exceptions that indorsed on the will "offered and introduced in evidence" appears a certificate, under seal, signed by the judge and *ex officio* clerk, certifying that "the foregoing and last will and testament of Henry Andre, deceased, together with the proof and certificate of probate thereof, were duly recorded in my

office," etc., imports absolute verity, and negatives any contention that no certificate showing that the will had been recorded in the office of the clerk of the probate court was offered in evidence, and also ·negatives any contention that the. court erred in admitting said will in evidence.

5. ————: Probate: By Judge in Vacation: Confirmation. A will to which is attached a certificate by the "judge and *ex officio* clerk" of the probate court in which "I do declare and adjudge said instrument of writing to be the last will and testament of Henry Andre, deceased, late of Daviess County, and the same is therefore admitted to probate and ordered to be recorded," being proved and admitted to probate by the judge himself, is, under the statute (Sec. 543, R. S. 1919), admissible in evidence, although the record does not disclose that the judgment of probate thus rendered in vacation was confirmed in term time.

6. PROOF OF TITLE: Common Source: Prior Plats and Deeds. Where both sides claim title through the testator as the common source, and defendants merely deny plaintiff's title and make no effort to show a better title or another source, it is not incumbent upon plaintiff to go back of the common source, but any irregularities in plats, documents or conveyances prior to such common source are immaterial.

7. WILL; Testimony of Scrivener: Harmless Error. The testimony of the scrivener as to the understanding and intention of the testator is inadmissible; but where two other witnesses who were present when the will was drawn testified, even more explicitly than did the scrivener, as to the declarations made by the testator relative to the manner in which he desired his land to be divided, and their testimony is substantial to support the decree of the trial court correcting the descriptions to conform to the testator's intention, the admission of the scrivener's testimony was harmless, and does not require a reversal.

Appeal from Daviess Circuit Court.—*Hon. Arch B. Davis,* Judge.

AFFIRMED.

*W. W. Davis* and *Nat G. Cruzen* for appellant.

(1)   A court of equity has no jurisdiction to reform a will on account of a mistake of the draftsman.   Goode

v. Goode, 22 Mo. 518; 34 Cyc. 924, sec 3. (2) The admission of the testimony of witness French as to the intention and declarations of the testator were inadmissible over the objections of the defendant. 40 Cyc. 1436. (3) Only an equitable title can pass from the United States Government by an entry of public lands; the fee only passes by patent. 32 Cyc. 1029.; Carman v. Johnson, 20 Mo. 108; Mosher v. Bacon, 229 Mo. 350; Wilcox v. Phillips, 199 Mo. 297; Gibson v. Choteau, 13 Wall. 92. (4) Having alleged that he was "the owner in fee simple," plaintiff has limited his proof to a naked legal title and cannot show an equitable title in support of that allegation. Stewart v. Land Co., 200 Mo. 281. (5) Suits brought to ascertain and determine the title under Sec. 2535, R. S. 1909, are similar in nature to ejectment suits. Machine Works v. Bowers, 200 Mo. 235; Graton v. Land & Lumber Co., 189 Mo. 337; Griffin v. Nicholas, 224 Mo. 330. Plaintiff must recover, if at all, on the strength of his own title, and not because of any weakness or want of title in the defendant. Large v. Fisher, 49 Mo. 307; Funkhouser v. Peck, 67 Mo. 19; Seimers v. Schrader, 14 Mo. App. 346; Creech v. Childers, 156 Mo. 338; Burnham Heirs v. Ritt, 132 Mo. 468; Marvin v. Elliott, 99 Mo. 616; Ratliff v. Graves, 132 Mo. 468; West v. Bretell, 115 Mo. 653; Mather v. Walsh, 107 Mo. 121; Foster v. Evans, 51 Mo. 39; Horwood v. Tracy, 118 Mo. 631. (6) Plaintiff must show a complete chain of title from the government to himself or the admitted common source of title, and the conveyances constituting the chain must each be sufficient to convey a legal title, or he must show such possession as to constitute a legal title. 10 Am. & Eng. Ency. Law (2 Ed.), 484, subd. 3; Finley v. Babb, 144 Mo. 403; Dollarhide v. Mabary, 125 Mo. 197; Harvey v. Anderson, 129 Mo. 206; Robinson v. Clagett, 149 Mo. 153; 32 Cyc. 1329. Where plaintiff seeks to recover on paper or record title he must show regular chain of title from Government. 15 Cyc. p. 36, note 47; Harvey v. Anderson, 129 Mo. 208. (7) A will not established as such

288 Mo.—18

by the probate court or other court having jurisdiction, is not admissible as evidence. Creasy v. Alberson, 43 Mo. 13; Smith v. Estes, 72 Mo. 310; Barnard v. Bateman, 76 Mo. 414; Snuffer v. Howerton, 124 Mo. 637; Farris v. Burchard, 242 Mo. 9. (8) A court of equity has no jurisdiction to construe a will which affects only real estate. 40 Cyc. pp. 1838 to 1840. Where a will is definite and certain and not ambiguous, no outside or extraneous evidence is admissible; it must be interpreted from the language of the will, without the aid of such extraneous evidence. 40 Cyc. 1427; Garth v. Garth, 130 Mo. 462; In re McVeigh's Estate, 181 Mo. App. 566; Heaton v. Dickson, 153 Mo. App. 312. Where the intention of the testator is expressed in the will in clear and unequivocal language there is no need for judicial construction of interpretation. 40 Cyc. 1382.

*Dudley, Selby & Brandon* for respondent.

(1) The evidence discloses that Henry Andre had owned and lived on this land for a great many years; that it was the only land he owned; that it had been his homestead for a long time and that the plaintiff and all the defendants claim under him, so that the evidence shows him to be the common source of title. Under this state of facts everything connected with the title prior to Henry Andre, the common source, is immaterial, both in ejectment and suits to quiet title. Stewart v. Lead Belt L. Co., 200 Mo. 291; Harrison Machine Works v. Bowers, 200 Mo. 235; Brown v. Brown, 45 Mo. 415; Fellows v. Wise, 49 Mo. 352; Ebersole v. Rankin, 102 Mo. 498; Finch v. Ullman, 105 Mo. 263; Graton v. Land & Lumber Co., 189 Mo. 335; Gage v. Cantwell, 191 Mo. 708. (2) The will on its face calls for extrinsic evidence that the ambiguity may be removed. It is the well established rule in this State that extrinsic and parol evidence is always admissible to show what land a testator owned at the time of making his will and at his death, and it is presumed that he intended to devise his own land and not that of

Andre v. Andre.

another.  Board of Trustees v. May, 201 Mo. 367; Thompson v. Thompson, 115 Mo. 67.  Where it is clear on the face of the will that the testator has not accurately or completely expressed his meaning by the words he has employed, and it was also apparent what words or their substance have been omitted, these words may be supplied to effectuate the intention as collected from the context.  Thompson v. Thompson, 115 Mo. 68; 1 Jarman on Wills (6 Ed.), 487; 6 Waits, Actions & Defenses, 382-383; Patch v. White, 117 U. S. 227, 29 L. Ed. 860.  (3) The ambiguity is apparent on the face of the will, and the many questions thus arising are of such a character that the rule is universal that the ambiguity may be removed by extrinsic evidence.  Board of Trustees v. May, 201 Mo. 368; In re Estate of Boeck, 160 Wis. 577, L. R. A. 1915E, p. 1008; McMahan v. Hubbard, 217 Mo. 624; Myher v. Myher, 224 Mo. 631.  It is presumed the testator meant to dispose of his whole estate and not to die intestate as to any part of it.*  To prevent the estate passing partly by will and partly by descent, words may be supplied, transposed or rejected, and where this can be done descriptions will be so corrected and interpreted as to include the whole property.  McMahan v. Hubbard, 217 Mo. 624; Robards v. Brown, 167 Mo. 447; Willard v. Darrah, 168 Mo. 670; Whitcomb v. Rodman, 156 Ill. 116; Hurst v. Von DeVeld, 158 Mo. 248; Watson v. Watson, 110 Mo. 171; Simmons v. Cabanne, 177 Mo. 336; Meiners v. Meiners, 179 Mo. 614; Grace v. Perry, 197 Mo. 560; Thompson v. Thompson, 115 Mo. 67; Bryant v. Garrison, 150 Mo. 668; Presnell y. Headley, 141 Mo. 194.

ELDER, J.—This is a proceeding to construe the will of Henry Andre, deceased, and to determine and quiet title to twenty acres of land claimed by plaintiff as devisee under the said will.

The petition is in two counts.  The first count thereof alleges that Henry Andre died in March, 1906, leaving surviving him his wife, Mine Andre (defendant here-

in); four children, to-wit, Byrdia L. Majors, Mary L. McKeag and Delia Brown (defendants herein), and George Andre, Jr. (plaintiff and respondent herein); four grand-children, to-wit, Cora Milliner, Charles Wells, Ida Tatum and Clara Taylor (defendants herein), being the only children and heirs of a deceased daughter, Lucy Wells; and Louella Andre (defendant and appellant herein), the sole child and heir of a deceased son, Charles H. Andre. Proceeding, the petition alleges that at the time of the death of said Henry Andre he was seized and possessed of the southeast quarter of the northeast quarter and the northeast quarter of the southeast quarter of Section 17, Township 59 of Range 26 in Daviess County, Missouri, comprising eighty acres, and that he owned no other land; that on February 28, 1906, he had made a will, which was duly proved and admitted to probate in the Probate Court of Daviess County on May 14, 1906, the same being as follows:

"I, Henry Andre, of Jackson Township, County of Daviess, and State of Missouri, being of sound mind and memory, do make publish and declare this to be my last will and testament, to-wit:

"First, all my just debts and funeral expenses shall be first fully paid.

"Second, I give devise and bequeath all of the north half of the southeast quarter Section Seventeen, Township Fifty-nine, Range Twenty-six, 20 acres to my son, George Andre, Jr.

"Third, I give devise and bequeath to Byrdia L. Majors all of the south one half of the southeast quarter of Section Seventeen (17) Township (59) of Range Twenty-six (26).

"Fourth, I give, devise and bequeath to my daughter, Mary L. McKeag all of the east half 20 acres, of the northeast quarter of the southeast quarter of Section No. Seventeen (17) Township No. Fifty-nine (59) Range Twenty-six, (26).

"Fifth, I give, devise and bequeath to my daughter, Delia Brown, all of the west half, 20 acres of the north-east quarter of the southeast quarter of Section Seventeen (17), Township Fifty-nine (59) of Range Twenty-six (26).

"Sixth, I give, devise and bequeath to my son, Charlie H. Andre's heirs five dollars.

"Seventh. I give, devise and bequeath to my daughter Lucy E. Well's heirs one dollar each.

"Seventh, I give and bequeath to my beloved wife Mine Andre, all of the aforesaid real estate during her lifetime.

"All of the above land is in Jackson Township, Daviess County, State of Missouri.

"In Witness Whereof, I have hereunto set my hand and seal this 28th day of Feb. A. D. 1906."

The petition further alleges that the said will "is so vague, uncertain and indefinite that it is impossible for the various legatees thereunder to determine what, if any, real estate they take;" that the terms thereof are "so conflicting that it is impossible to reconcile the provisions thereof with the property owned by the deceased at the time of his death," in the following particulars, to-wit: That under the will plaintiff, George Andre, Jr., is devised eighty acres (which is called twenty acres), the west one-half of which eighty acres had never been owned by the testator, but in truth and fact belonged to one John W. Burge; that the land devised to Byrdia L. Majors had never been owned by the testator, but in fact belonged to one R. W. Burge; that the twenty acres devised respectively to Mary L. Mc-Keag and Delia Brown was part of the same land devised to plaintiff George Andre, Jr.; that the south forty acres of land actually owned by the testator was devised to three different children, while the north forty acres actually owned by him was not devised at all; that a latent ambiguity is manifest in the said will, which will require the aid of outside evidence to remove; that the

said will should be construed as devising to plaintiff the north half of the southeast quarter of the northeast quarter of the said Section 17, to defendant Byrdia L. Majors the south half of the southeast quarter of the northeast quarter of said section, to defendant Mary L. McKeag the east half of the northeast quarter of the southeast quarter of said section, and to defendant Delia Brown the west half of the northeast quarter of the southeast quarter of said section. The count closes with a prayer for construction of the will accordingly.

The second count alleges that plaintiff is the owner in fee simple of the north half of the southeast quarter of the northeast quarter of the said Section 17, but that defendant Mine Andre is entitled to a life estate therein; that defendants each claim and assert some title, estate or interest in the said land, which is adverse and prejudicial to the title of plaintiff; wherefore it is prayed that the court "try, ascertain and determine the estates, title and interests of the plaintiff and of the defendants, and each of them of, in and to the said real estate, and by its decree to adjudge, determine, settle, quiet and define the respective rights, titles, interests and estates of the plaintiff and defendants to said real property."

All of the defendants except Carrie A. Barner and Louella Andre, though served personally or by publication, made default. Defendant Carrie A. Barner filed a disclaimer. Defendant Louella Andre, having first filed a demurrer, which was overruled, then answered by a general denial.

The record shows that a jury was waived by both parties and trial was had before Honorable Arch B. Davis, Judge of the Circuit Court for Daviess County. Defendants offered no evidence, but at the beginning of the trial objected to the introduction of any evidence upon the ground that the petition did not state facts sufficient to constitute a cause of action. This objection was overruled by the court.

Plaintiff, to sustain the issues on his part, introduced in evidence a plat book of original entries and several deeds tending to prove the acquisition by Henry Andre of the S. E. ¼ of the N. E. ¼ and the N. E. ¼ of the S. E. ¼ of Sec. 17, Tp. 59, R. 26, comprising in all 80 acres.

Mrs. Mine Andre, widow of Henry Andre, testified as to the relationship to the said Andre of the various parties to the suit, as to the ownership and possession by the deceased of the land acquired as above mentioned, and as to the ownership by him at the time of his death of no other land.

L. B. French, farmer and justice of the peace, 72 years of age, testified that he wrote the will of the deceased, at the latter's home and under his direction; that he had had "very little" experience in drawing wills, "I believe this is the third one," but that he had written several deeds; that he did not have much education; that he thought Henry Andre was "an average enlightened man;" that the conversation of Mr. Andre sounded like he was a German, as he spoke brokenly.

"Q. When you got there did Mr. Andre tell you what he wanted you to write in the will as to his property? A. Yes, sir.

"Q. What, if anything, did he tell you about what you should write in the will about Charlie Andre?

"Objection by counsel for defendants—objection overruled—exception saved.

"A. He said he would give Charlie Andre's daughter $5.

"Q. What, if anything, did he say about the north 20 acres of land? Objection—overruled—exception saved.

"A. He said to give that to his son George.

"Q. How did he say that, tell the court as near as you can the words he used and the direction he gave you?

"Objection—overruled—exception saved.

"A. He first told me that his wife should have the use of the place as long as she lived and at her death George got the north twenty.

"Q. Who got the south twenty of that? A. I believe Birdie Andre.

"Q. That is Birdie Majors? A. Yes, sir.

"Q. What did he tell you to do with the south forty? A. He divided it up the same way, but I can't recollect how he named it out.

"Q. Who, if anybody, did he say to give the west twenty of the south forty acres to? A. I think to Delia Brown.

"Q. Do you remember who he said to give the east twenty of the south forty to? A. I believe to his daughter, Mary McKeag.

"Q. How did you get the description of these various twenty acres of land that you wrote in the will? A. We had the deed there and George Andre was calling it off part of the time and I was part of the time.

"Q. Do you remember whether he called to you the description of George's land or not or how you got the description of the north twenty of the north forty? A. Got it from the deed.

"Q. Were you or were you not using the deeds by which the land was conveyed to him as a model and trying to make the description according to the deeds? A. Yes, sir.

"Q. Do you know whether or not you did write it then as it was in the deed or not? A. If I made a mistake I done it ignorantly; I didn't know it."

R. W. Burge, who lived a mile from Henry Andre's farm, testified that the deceased had owned and lived on the N. E. ¼ of the S. E. ¼ and the S. E. ¼ of the N. E. ¼ of Section 17, and had owned no other land; that for fifteen years he (the witness) had owned the eighty acres described as the S. ½ of the S. E. ¼ of Section 17, adjoining the Andre land on the south; that for thirty years his father, J. W. Burge, had owned the forty acres lying

immediately west of the Andre land, which forty acres was described as the N. W. ¼ of the S. E. ¼ of Section 17.

Farley Burge, Harry Burge and Andrew Miller testified substantially to the same effect as did R. W. Burge. Andrew Miller further testified that Henry Andre was of German ancestry, spoke English brokenly, but could read and write English; that he (the witness) was present when Squire French wrote the will of Andre.

"Q.  Did you hear the direction that Henry Andre gave Squire French about how he should write the will? A.  I did.

"Q.  What did he tell him with reference to the north twenty of the eighty acres that he owned?

"Objection by counsel—objection overruled—exception saved.

"A.  Well, he divided the eighty into four parts, and I couldn't recall exactly, but there was three girls and George Andre, Jr., and he divided it into four equal parts and gave twenty acres to each one.

"Q.  Did he tell Squire French which one of the children was to have a certain twenty? A.  He did; he designated each child and which twenty they should have.

"Q.  Do you remember how they tried to get the legal description of the land when the will was being written? A.  I think Mr. Andre gave it to him from memory while he was lying in the bed, I don't think he had any deeds there."

Over the objection of counsel for defendants, George Andre testified that he was present when the will was made.

"Q.  What did he tell Squire French to write into the will about the land? A.  Well, he said he would divide it up between the four of us, twenty acres apiece.

"Q.  Who did he tell him to give the south (north?) twenty to? A.  To me, George Andre.

"Q.  Who did he tell him to give the south twenty of the north forty to? A.  To Birdie Majors.

"Q. How did he say to divide the south forty? A. East and west.

"Q. Who did he say to give the west twenty of that forty to? A. To Delia Brown.

"Q. Who was Squire French instructed to give the east twenty of that forty to in the will? A. Mary Mc-Keag."

W. H. Hunt testified that he was present when the will was drawn.

"Q. What were the instructions he gave Squire French? A. Well, he had it divided up equally in four different parts, the north twenty was given to George, and the next twenty was given to Birdie Andre, or Birdie Majors, and the other two twenties of the south forty were given to Mrs. Brown and the other girl.

"Q. How was the south forty divided? A. North and south; the north forty was divided east and west, and the south forty north and south.

"Q. Did Henry Andre give any reason why he divided the land that way? (Objection—overruled—exception saved). A. To make each twenty as near equal as he could. By doing so it gave each person about the same amount of good and bad land in dividing the eighty."

The foregoing sufficiently outlines the case as presented. Further matters of evidence excepted to will be adverted to in the course of the opinion.

Upon the first count of the petition the court made a finding in substance that the will of Henry Andre, as hereinbefore set out, had been duly proved and admitted to probate; that at the time of his death the said Andre was seized and possessed of a fee simple title to eighty acres of land, being the S. E. ¼ of the N. E. ¼ and the N. E. ¼ of the S. E. ¼ of Section 17 aforesaid, and owned no other land; that said will is ambiguous and conflicting and the provisions thereof cannot be reconciled with the property owned by the deceased, without extraneous evidence; that from the evidence given in the case it was the purpose and intent of the testator to give to the heirs

of Charlie H. Andre (Louella Andre, appellant herein) the sum of five dollars, to the heirs of Lucy E. Wells the sum of one dollar each, and to his wife, Mine Andre, the use and benefit of all of said land so long as she lived; that from the evidence it was the purpose and intention of said Henry Andre to divide the eighty acres of land he possessed into four equal parts, and that by dividing the north forty acres of said land into the north half and south half thereof and the south forty acres into the east half and the west half thereof, the four parts thereby made would be substantially equal in value; that from the evidence and the face of the will it was the purpose and intention of said Andre to devise to his son George Andre, Jr., the N. ½ of the S. E. ¼ of the N. E. ¼ of said Section 17, to his daughter Byrdia L. Majors the S. ½ of the S. E. ¼ of the N. E. ¼ of said section, to his daughter Mary L. McKeag the E. ½ of the N. E. ¼ of the S. E. ¼ of said section, and to his daughter Delia Brown the W. ½ of the N. E. ¼ of the S. E. ¼ of said section, each of said tracts containing 20 acres, and all to be subject to the life use by his widow, Mine Andre. Pursuant to this finding the court rendered a decree construing the will accordingly, and adjudging the several parties to take absolutely thereunder the several sums of money and tracts of land respectively found to be due them, the said land to be subject to the life use by Mine Andre and to the payment of the money legacies provided in the will.

Upon the second count pleaded in the petition the court made a finding that plaintiff was the absolute owner in fee simple of the N. ½ of the S. E. ¼ of the N. E. ¼ of Section 17, subject to the right of Mine Andre to have the use and benefit thereof during her lifetime and subject also to the payment of the money legacies provided in the will of Henry Andre. In accordance with this finding the court rendered a decree quieting title to said land in plaintiff and barring defendants from asserting any claim thereto.

From the judgment and decree so rendered upon both counts, defendant Louella Andre has appealed.

I.    Appellant assigns as error the admission of "any evidence in the case over the objection of the defendant." At the trial the objection offered against the introduction of any evidence was put upon the ground that "the petition does not state facts sufficient to constitute a cause of action." In the brief filed in this court, however, appellant seems to predicate her objection upon lack of jurisdiction in the court to construe a will "which only affects real estate, the devisees claiming only legal estates," and upon want of jurisdiction by the court "to reform a will on account of a mistake of the draftsman." As further error appellant assigns the rendering of "any verdict reforming the alleged will of said Henry Andre." This assignment is likewise based upon lack of jurisdiction by the court below, and we shall accordingly consider the alleged errors together.

*Equity Jurisdiction.*

In support of the contention that a court of equity cannot construe a will on application of devisees claiming merely legal estates in real property, learned counsel for appellant cite 40 Cyc. 1840. True, the doctrine relied on is there enunciated as stated by counsel. However, the authorities cited in substantiation of the rule are all of foreign states and are not consonant with the holdings of courts of last resort in Missouri. By undoubted precedent it is now well established that in this State, circuit courts, as courts of equity, acting upon application of any party interested, have jurisdiction to construe doubtful provisions of a will, whether relating to real estate or personalty. [Lich v. Lich, 158 Mo. App. 400; Davidson v. Inv. Co., 226 Mo. l. c. 23; First Baptist Church v. Robberson, 71 Mo. 326; Hamer v. Cook, 118 Mo. l. c. 489; Graham v. Allison, 24 Mo. App. 516.]

For authority that the court had no jurisdiction to reform the will on account of a mistake of the draftsman, counsel cite the case of Goode v. Goode, 22 Mo. 518. As argued, the court in that case does substantially announce

the rule as stated by appellant. A reference to the facts involved and the authorities quoted will show, however, that the doctrine pronounced was not to be considered applicable to wills where the mistake is apparent on the face of the instrument or where there arises a latent ambiguity. It is obvious from the will before us, without resort to extraneous evidence, that a mistake occurred when by the second paragraph thereof the testator devised *all* of the N. ½ of the S. E. ¼ of Section 17 to his son George Andre, Jr., and by the fourth and fifth paragraphs devised *part of the same land,* to-wit, the eastern forty acres, to his daughters, Mary L. McKeag and Delia Brown. It is equally obvious that a mistake was made when by the second paragraph he devised eighty acres of land to George Andre, Jr., calling it twenty acres, and that a latent ambiguity existed when by the same paragraph he gave the said George Andre, Jr., forty acres, and by the third paragraph gave Byrdia L. Majors eighty acres, both of which tracts he in fact did not own. The Goode case, *supra,* cannot therefore be said to constitute authority in the instant case, but *contra,* in the light of more pertinent and recent decisions, we hold that the court had jurisdiction to construe the will here present. [Thomson v. Thomson, 115 Mo. 56; Board of Trustees v. May, 201 Mo. 360; McMahan v. Hubbard, 217 Mo. 624; Briant v. Garrison, 150 Mo. 655; Patch v. White, 117 U. S. 210.]

As to the objection urged at the trial, that the petition did not state facts sufficient to constitute a cause of action, we are clearly of the opinion that there is no merit in that contention. The first count pleads the will in full, alleges its having been probated, sets

Cause of
Action.

out the land actually owned by the testator, indicates specifically wherein the provisions are uncertain and conflicting as to the disposition of land owned and devised, and suggests the construction which should prevail. The second count pleads the ownership of the land in controversy, alleges the assertion of claims

adverse thereto, asks the court to try and determine the interests of the parties, and prays a decree quieting title in plaintiff. We rule that the allegations in both counts are sufficient.

II. Appellant contends that the court erred "in admitting in evidence over the objections of the defendant, the alleged will of Henry Andre, offered by plaintiff."

Proof that Will Was Recorded.

In support of this insistence learned counsel for appellant urge that no certificate showing that the will had been recorded in the office of the Clerk of the Probate Court "was admitted or offered in evidence." An examination of the bill of exceptions shows that endorsed on the will "offered and introduced in evidence" appears a certificate under seal, signed "Thomas R. Shaw, Judge and *ex-officio* Clerk," certifying that "the foregoing last will and testament of Henry Andre, deceased, together with the proof and certificate of probate thereof, *were duly recorded in my office* at Gallatin on the 14th day of March, A. D. 1906, in Book 2, page 326, and following." In view of this recital, the point made is unavailing, being contradicted by the bill of exceptions, which we have held imports absolute verity. [Pietzuk v. Kansas City Rys. Co., not yet reported; White v. Mo. Pac. Ry. Co., 178 S. W. l. c. 84; Althoff v. Transit Co., 204 Mo. 166; Stegman v. Berryhill, 72 Mo. 307.]

Appellant further insists that the will was not admissible in evidence for the reason that it was "not established by proper judgment of a proper court." Again

Probate in Vacation.

a reference to the bill of exceptions shows that the will introduced in evidence had endorsed thereon a certificate signed by the three attesting witnesses to the will, sworn to before the Judge and *ex-officio* Clerk of the Probate Court of Daviess County, to the effect that on March 14, 1906, in vacation, they personally appeared before the said judge and made proof of the excution of the will, *i. e.* that the testator had signed and published the same in their presence, that

at the time of publication he was of sound mind and more than 21 years of age, and that at his request and in his presence and in the presence of each other they had subscribed their names thereto as attesting witnesses. Following this endorsement appears a further certificate under seal, dated March 14, 1906, signed "Thomas R. Shaw, Judge and *ex-officio* Clerk," reciting that "I, Thomas R. Shaw, Judge and *ex-officio* Clerk of the Probate Court of the county and state aforesaid, having examined the foregoing instrument of writing, signed by Henry Andre, and purporting to be the last will and testament of Henry Andre, deceased, and having heard the testimony of Andrew Miller and W. H. Hunt and George Andre, Sr., subscribing witnesses thereto in relation to the execution of the same, *do declare and adjudge said instrument of writing to be the last will and testament of Henry Andre, deceased,* late of Daviess County, and *the same is therefore admitted to probate and ordered to be recorded.*" Then follows the certificate of recording, as above mentioned. True, as argued by appellant, the record does not disclose that the judgment thus rendered in vacation was confirmed in term time. However, under our statute, Section 564, Laws of 1917, page 128 (Sec. 534, R. S. 1919), which provides that "every will, admitted to probate in this State, together with the order of the court admitting the same recorded and certified by the clerk of the court and attested by his seal of office, may be read as evidence without any further proof thereof," we are clearly of the opinion, and so hold, that the court committed no error in admitting the instant will in evidence. The cases cited by counsel for appellant are distinguishable from the facts in the case under review, for here the original will, duly proved, admitted to probate by the judge of the court, and recorded, was introduced, while there the will was proved before the clerk in vacation, without confirmation by the court. We therefore rule the point against appellant.

. III. Appellant next assigns as error the admission in evidence of a certified plat of original entries on file in the office of the Clerk of the county court of Daviess County, and a waranty deed from the Hannibal & St. Joseph Railway Company to Henry Andre. These muniments of title were offered by plaintiff as part of a chain to establish title claimed by him in the second count of his petition. They were objected to by appellant, "the plat for the reason that it constituted no evidence of passing of legal title from the United States Government, and the deed for the reason that the purported grantor had no title."

Proof of Title: Common Source.

The only answer filed by any of the defendants, appellant included, was a general denial. Defendants all contented themselves with resting their case upon the title proved by plaintiff, offering no evidence in derogation thereof.

The evidence adduced by plaintiff to sustain the issues on his part tended to prove that Henry Andre (under whose will plaintiff claims) had purchased the north forty acres of which he died possessed from the Hannibal & St. Joseph Railway Company, and the south forty acres from one Ed. E. Yates; that as soon as he acquired the same he had taken possession thereof and occupied the land as his homestead up until the time of his death. The particular land owned by the said Andre was identified by witnesses French and R. W. Burge, from a county atlas of Daviess County, introduced in evidence. Witness Miller, who lived "just a mile across the field" from the Andre farm testified:

"Q. How long had he [Henry Andre] lived by you? A. I have been there 43 years, and he was living there when I moved where I am now.

"Q. On which forty was he living? A. On the north forty of the eighty.

"Q. When did he acquire the south forty? A. It was some time after I came where I am; I think fifteen or twenty years ago.

"Q.  After he acquired the south forty, who had possession of that?  A.  Him, all the time.

"Q.  Ever since you first knew him forty years ago, he had possession of the north forty.  A.  Yes, sir.

"Q.  And he had possession of the south forty ever since he bought it?  A.  Yes, sir."

From all the evidence it is clear that Henry Andre was the source of title of plaintiff; and defendants, having merely denied plaintiff's title, but having shown no better title and no other source by which they could possibly have acquired title, must be held to also claim through Henry Andre, thereby making him the common source of title.  That he was the common source is apparent from the whole face of the record.

Accordingly, in making his case, it was not incumbent on plaintiff to go back of the common source of title, and any irregularities which may have existed in documents or conveyances prior to such common source were immaterial.  [Harrison Machine Works v. Bowers, 200 Mo. l. c. 235; Ebersole v. Rankin, 102 Mo. l. c. 498, 499; Charles v. White, 214 Mo. l. c. 211, 212; Gage v. Cantwell, 191 Mo. 698; Stewart v. Lead Belt Land Co., 200 Mo. l. c. 291; Gratton v. Land & Lumber Co., 189 Mo. 322; Finch v. Ullman, 105 Mo. 255.]  The claim of error is therefore disallowed.

IV.  Appellant finally contends that the court erred in admitting in evidence "the testimony of witness L. B. French as to the intention and declarations of the testator Henry Andre."  The witness French being the scrivener of the will, and the weight of authority holding that the testimony of the scrivener, as to the intention or understanding of the testator, is inadmissible, we are inclined to the view that the point is well taken.  [Napier v. Little, 137 Ga. 242, 38 L. R. A. (N. S.) 91; Batton v. American Tract Society, 23 Vt. 336; Griscom v. Evens, 40 N. J. L. 402; McCauley & Co. v. Buckner, 87 Ky. 191; M'Allister v. Tate, 11 Rich. 509; Lincoln v. Perry, 149 Mass. 368; 40

*Testimony of Scrivener.*

288  Mo.—19

Cyc. 1436.]  However, the witnesses W. H. Hunt and George Andre, who the record shows were present when the will was drawn, testified as to the declarations made by the testator relative to the manner in which he desired the land to be divided, even more explicitly than did the scrivener French.  Therefore, there was substantial evidence before the court, exclusive of the testimony of the witness French, upon which to predicate the finding that it was the intention of the testator to devise to his several children the lands specifically adjudged to be theirs. Such being the case, and a review of all of the evidence having served to convince us that it was sufficient to authorize the finding and decree entered thereon, we are not disposed, on account of what may in the instant case be characterized as harmless error, to disturb the conclusions reached by the learned trial chancellor.

Accordingly, having fully considered the several questions raised by appellant, and finding nothing therein to justify an interference with the judgment rendered, the same is hereby affirmed.  All concur.