Clarence EVANS and St. Louis Union Trust
Company, a Corporation (Plaintiffs),
Respondents,

v.

The VOLUNTEERS OF AMERICA, a Cor-
poration (Defendant), Appellant,

and

The Salvation Army, Inc., a Corporation
(Defendant), Respondent.

No. 44431.

Supreme Court of Missouri.

Division No. 1.

June 13, 1955.

Pollock, Ward, Klobasa & Shaw, T. Hartley Pollock, John A. Shaw, St. Louis, for appellant.

G. A. Buder, Jr., Richard O. Roberts, St. Louis, for respondent Salvation Army.

HOLMAN, Commissioner.

Action by the executors under the will of Kitt Pitts Shobe for a declaratory judgment as to which of two charitable corporations, The Volunteers of America (appellant) or The Salvation Army, Inc. (respondent) is the legatee in item two and residuary devisee and legatee (item ten) in said will. The trial court decreed that the Salvation Army was the devisee and legatee, from which said decree The Volunteers of America has appealed. We have jurisdiction as title to real estate is involved and the amount in dispute exceeds the sum of $7,500. Article V, Section 3, Constitution of Missouri, 1945, V.A.M.S.

The will in question was prepared by a St. Louis attorney, and was duly executed

by Mrs. Shobe on June 28, 1949. The testatrix had resided for years at the Forest Park Hotel in St. Louis, Mo. She died February 26, 1950, and the will was admitted to probate shortly thereafter. In this suit we are particularly concerned with the following items of said will:

"*Item Two: Disposition of Personal Effects.* If at the time of my death LILLIAN WOODS ABBINGTON shall be in my service, I give and bequeath to said LILLIAN WOODS AB-BINGTON, all of my clothing, furs, automobiles, linens, silverware, with the exception of flat silver, furniture and furnishings, and such other personal property as she may select, which are not herein disposed of, and the remainder thereof unto the VOLUNTEERS OF AMERICA, commonly known as the Salvation Army, in St. Louis, Missouri, for distribution to the poor."

"*Item Ten: Disposal of Residue of Estate.* All the rest, residue and remainder of my property, real, personal and mixed, of whatsoever kind and nature, and wheresoever situated, which I may own or have the right to dispose of at the date of my death, I hereby give, devise and bequeath to the VOLUNTEERS OF AMERICA, commonly known as the Salvation Army, located in St. Louis, Missouri, to be held by it in perpetuity for the use and benefit of the poor.

"It is my desire that the assets which may be delivered to the VOLUN-TEERS OF AMERICA hereunder, together with any reinvestment of the proceeds thereof, be held by said VOL-UNTEERS OF AMERICA, the Salvation Army, in a separate endowment funds, the principal to be kept intact, and the income forever used for its charities."

 It is obvious that our task upon this appeal is to determine which of the organizations named in said items is, in fact, the devisee and legatee therein. In construing wills, the paramount rule, to which all others must yield, is that the in-

tention of the testator governs unless it conflicts with some positive rule of law, and that intention is to be gathered from the will as a whole. Section 468.620 RSMo 1949, V.A.M.S.; Gannett v. Shepley, 351 Mo. 286, 172 S.W.2d 857. In the event the will is ambiguous, extrinsic evidence is admissible as to the circumstances surrounding the testator when the will was executed.

In the instant case the trial court, over the strenuous objection of the appellant, admitted and considered the following evidence: The scrivener testified that he prepared the will after being instructed by testatrix to follow a prior will which she had executed, making only such changes as she directed. Ten days before the will was executed he received a letter from Mrs. Shobe containing certain directions as to provisions she desired in the new will. This letter contained a provision for Lillian Woods Abbington for "$8,000.00 for purchase of a house—and at her death this house to be sold and the money derived therefrom to go to Salvation Army"; a provision for La Una Ricketts "to pay off the mortgage on her house—if paid then this is to be used for a down payment on another piece of property and at her death or her husband's then was to go to Salvation Army"; a provision for Dorothy Coffield to be used "for the down payment on a house and at her death this amt. (paid) to go to Salvation Army"; and a provision for "Cleo . . . for the down payment on a house and at her death this amount to go to Salvation Army."

The scrivener testified that the words, "Volunteers of America, commonly known as the Salvation Army," used in describing the legatee in items two and ten were copied from the prior will.

The respondent also presented the evidence of seven witnesses who were either former employees or other persons closely associated with testatrix, all of whom testified that she frequently mentioned the Salvation Army as a worthwhile organization and, with one exception, never mentioned the Volunteers of America. She frequently indicated that the Salvation Army

was her favorite charity. Her physician, Dr. Gottlieb, said she mentioned the "Emergency Shelter on Rauschenbach Street," the "Booth Hospital on Marine Avenue," and the "Tree of Lights" at the Christmas season. All of these establishments and activities were shown to be those of the Salvation Army. One witness said testatrix mentioned the Volunteers of America but seemed to think it was a part of or associated with the Salvation Army.

Appellant called as a witness, Mr. Gould, the officer in charge of Volunteers of America in St. Louis, who, over objection, was permitted to testify that people frequently referred to the Volunteers of America as the Salvation Army.

It is the contention of appellant that the trial court erred in admitting and considering any extrinsic evidence because such is a violation of the rule that wills must be in writing and executed according to statute. It is urged that the will is not ambiguous. Appellant argues that the plain, grammatical meaning of the will is that the Volunteers of America is the legatee named and the phrase, "commonly known as The Salvation Army," is merely parenthetical and descriptive and should be ignored as surplusage. Further, it is urged that if, for the purpose of argument, it is assumed that the will is ambiguous, then such ambiguity can be resolved from a consideration of the entire will alone.

■ We disagree with these contentions. It is our view that the will contains a latent ambiguity as to the legatee named in the items now brought into question. The uncertainty does not become apparent until it is shown that the Volunteers of America and the Salvation Army are two separate, independent, charitable corporations and not one organization known by the two names. No one simply reading the will could know which was intended to be the object of testatrix' bounty. The fact that Volunteers of America is written first and in capital letters might indicate that it was the legatee intended. Such might also be suggested by the fact that the second use

of the name, Volunteers of America, in item ten is not followed by the phrase, "commonly known as the Salvation Army." On the other hand, the wording in the last use of the phrase in item ten, "VOLUNTEERS OF AMERICA, the Salvation Army," would indicate that testatrix considered that the Volunteers of America was, in fact, the Salvation Army. Moreover, it would seem clear that she intended to make the bequest to an organization known as the Salvation Army. While there is some evidence that the Volunteers of America is frequently referred to as the Salvation Army, it must be conceded that no organization is as well known by the name Salvation Army as is the Salvation Army itself.

■ We are convinced that for any court to attempt to decide this question by a consideration of the will alone would be an adjudication based upon judicial speculation and guesswork. This is certainly not to be desired and hence we rule that the trial court properly considered extrinsic evidence in its effort to solve this perplexing problem.

It next becomes important for us to give attention to the question as to how much of the evidence considered by the trial court was properly admitted. Actually, a determination of this question may be decisive of the case as it seems to us that if all of that evidence is considered, the conclusion is inescapable that testatrix intended to designate the Salvation Army as the legatee.

■ The rule is well settled that, "where the will contains a latent ambiguity as to the person or thing intended by the testator, as where the instrument or a provision thereof applies equally as well to two or more objects or persons, evidence of statements or declarations made by the testator is admissible for the purpose of identifying the person, or property he intended, when it is necessary to do so, provided that the declarations are not inconsistent with the terms sought to be explained, and do not tend to show another

intention, and provided also that there appears on the face of the will a sufficient indication of testator's intention to justify the application of the evidence." 69 C.J., Section 1179, pages 149, 150. See also 57 Am.Jur., Wills, Section 1109; 94 A.L.R. 26, 79; Gordon v. Burris, 141 Mo. 602, 43 S.W. 642; In re Aiken's Estate, Mo.App., 5 S.W.2d 662; Bishop v. Broyles, 324 Mo. 69, 22 S.W.2d 790.

▮ In view of the above-mentioned rule and the authorities cited in support thereof, it appears clear that the court properly considered the evidence of the seven associates of testatrix to the effect that she frequently referred to the Salvation Army favorably and never mentioned the Volunteers of America as an independent organization.

▮ Undoubtedly the most convincing evidence offered by the respondent was the letter of directions written to the scrivener by testatrix. Was this admissible? For the purposes of this case we can see no distinction between this letter and the admissibility of evidence of oral instructions. Ordinarily, testimony of the scrivener is not permitted as to declarations by the testator regarding his intentions in disposing of his property or his instructions concerning the preparation of the will. "The general rule is that parol evidence as to the testator's declarations concerning his intention, whether made before, at the time of, or subsequent to, the execution of his will, are incompetent upon the question of the construction to be given the language employed in the instrument. This for the reason that the testator's intention is to be ascertained from the will itself, considered in the light of relevant, extrinsic circumstances where the language used is ambiguous; and were parol evidence of the testator's verbal declarations to be admitted, not only would the result be to subject the question of his intention to evidence of declarations which he, being dead, could not dispute, but it would also, in effect, be violative of the statute which requires all wills to be made in writing. Wooley v. Hays, 285 Mo. 566, 226 S.W. 842, 16 A.L.R. 1; Neibling v. Methodist Orphans' Home Ass'n, 315 Mo. 578, 286 S.W. 58, 51 A.L.R. 639; Marr v. Marr, 342 Mo. 656, 117 S.W. 2d 230." Aurien v. Security Nat. Bank Savings & Trust Co., Mo.App., 137 S.W. 2d 679, 684.

▮ The general rule heretofore set out, however, does not appear to prohibit testimony by the scrivener when such is necessary in order to resolve a latent ambiguity as to the identity of a beneficiary. Such a situation arises when a description of a legatee (as in the instant case) will apply, with more or less certainty, to two or more persons or corporations. A review of many cases has led us to the definite conclusion that, under the law of Missouri and many other states, evidence of a testator's instructions to the scrivener (under circumstances such as exist in the instant case) is admissible to assist in establishing the intention of the testator as to the identity of a legatee under a description which is equivocal and latently ambiguous. Willard v. Darrah, 168 Mo. 660, 68 S.W. 1023; Hockensmith v. Slusher, 26 Mo. 237; Bond v. Riley, 317 Mo. 594, 296 S.W. 401; In re Miller's Estate, 26 Pa.Super. 443; Day v. Webler, 93 Conn. 308, 105 A. 618; Covert v. Sebern, 73 Iowa 564, 35 N.W. 636; Bradley v. Rees, 113 Ill. 327, 55 Am.Rep. 422.

Appellant, relying upon Andre v. Andre, 288 Mo. 271, 232 S.W. 153, argues that the testimony of the scrivener (and the letter of directions) was not admissible. In that case the issue related to the identity of land devised rather than to the identity of the devisee. This would seem, however, to be an analogous situation. The court stated that the trial court erred in admitting the testimony of the scrivener as to the intentions and declarations of the testator. Strangely enough, however, the court affirmed the judgment upon the testimony of other witnesses who were present and heard the instructions given the scrivener by the

testator. We do not know of any distinction to be made as to the admissibility of such evidence whether it may come from the scrivener or from other witnesses that were present. It may be that the Andre case is distinguishable from the instant case upon the facts and the particular words used in that opinion. However, if the Andre case is construed as being contrary to the rule we have heretofore stated, then it is our view that it was overruled, by implication, by the later opinion of this court in Bond v. Riley, supra.

It follows from what we have said that all of the evidence heretofore detailed was properly admitted and considered by the court. When this evidence is considered in connection with the entire will, it becomes clear that testatrix intended to name the Salvation Army as the legatee and devisee in items two and ten of her will. It would serve no useful purpose to review the extrinsic evidence in any detail. The Salvation Army was mentioned four times in the letter of directions in connection with legacies of a residuary nature. In carrying out those directions, the scrivener did not separately provide that the money used to purchase a home for Mrs. Abbington, for example, would, at her death, go to the Salvation Army, but the will states that it "shall pass as a part of my residuary estate." The fact that the testatrix accepted this manner of compliance with her directions, and executed the will as so written, is a clear indication that she considered that the Salvation Army was the residuary legatee therein.

The judgment and decree of the trial court is affirmed.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.